Filed Nov. 21, 1894.

------♦------

No. 15,844.

BROWNING ET AL. *v.* SMITH ET AL.

SUPERIOR COURT.—*Jurisdiction, Concurrent.—Tax Deed.—Quieting Title.—Circuit Court.—Statute Construed.*—An action to quiet title to land held under a tax deed may be brought in the superior court. The act of December 21, 1872, providing that such suit may be instituted in the circuit court of the county where the land lies, does not destroy the former act of February 15, 1871, conferring original concurrent jurisdiction of such class of cases upon the superior and circuit courts.

VARIANCE.—*Amendable.—Decree.—Collateral Attack.—Quieting Title.—Misdescription.*—Where, in an action to quiet title, the land is mis-

described in the complaint, but is correctly described in the decree, the decree can not, on account of such variance, be collaterally attacked; and, on appeal, such variance would be deemed amended.

QUIETING TITLE.—*Parties Defendant.—Omission of Lienholder as Party.—Effect of Decree.—Practice.—Waiver.—Collateral Attack.—* The omission of the owner of the equity of redemption as a party to a suit to quiet the title to the land in controversy would not prevent the decree from operating to bar and foreclose those who were parties to the suit, and who were decreed to be barred and foreclosed; and the objection that the owner of the equity of redemption was not a party to the suit could only be taken in that cause by demurrer or by answer (not in a collateral suit), and not being so taken, the objection is waived.

SAME.—*Against Superior Lienholder.—Payment or Offer to Pay.—Equitable Relief.*—Where a party seeks to have title quieted against superior lienholders, before he can ask the interposition of a court of equity in his behalf, he should either pay, or offer to pay, the superior lien against which he seeks to quiet title.

From the Marion Circuit Court.

*E. P. Ferris, F. J. VanVorhis, W. W. Spencer, A. C. Harris,* S. *Claypool, E. E. Stroup* and *W. E. Niblack,* for appellants.

*O. B. Jameson,* for appellees.

DAILEY, J.—The appellants, who were the plaintiffs below, filed in the Marion Circuit Court a complaint of one paragraph in the usual form to quiet title to seven lots, numbered 114, 133, 134, 360, 361, 362 and 363, respectively, in H. R. Allen's second north addition to the city of Indianapolis. A general denial completed the issues and a trial was had, resulting in a finding and judgment for the appellees.

On May 13, 1889, the appellants took a new trial as a matter of right, and thereupon a new trial was had, likewise resulting in a finding and judgment for the appellees. Special findings and conclusions of law were rendered October 9, 1889, on which judgment was entered in favor of the appellees October 15, 1890.

No question arises on the pleadings. The only ques-

tion is that presented by the assignment of error, that the court erred in its conclusion of law upon the facts found. Appellants assume that the court did so err. Appellees insist that there is no error in the record.

The special findings are numbered from one to twenty-two inclusive, and occupy too much space to be incorporated bodily into this opinion.

The following is a brief summary of what we consider the pertinent facts: As stated, the real estate involved in this litigation is seven lots in H. R. Allen's second north addition to Indianapolis. The Indianapolis Wagon and Agricultural Works became the owner of the lots, September 20, 1873. On October 18, 1876, while said company was the admitted owner in fee-simple of the lots in suit, Browning & Sloan recovered a judgment against it for $479.61, which became a lien thereon. On December 28, 1885, execution was levied on the real estate, and it was sold by the sheriff and bought in by the judgment creditors for $300 on January 23, 1886, and a sheriff's deed was afterward executed to the appellants, Browning and Ferris, the latter having taken the place of Sloan, in the certificate, by assignment on the first day of February, 1887. This constitutes the basis of the appellants' claim of title. On the 16th day of November, 1876, the "Indianapolis Wagon and Agricultural Works" became embarrassed, and, for the benefit of their creditors, made a general assignment and conveyance under the statutes of this State, to Eli F. Ritter, trustee of all their property and the lots described in the complaint, with others. The deed was properly executed, acknowledged, and recorded, November 23, 1876. Said Ritter, as trustee, qualified and gave bond December 1, 1876, and filed an inventory and appraisement January 16, 1877. On the 19th day of April, 1877, the said trustee reported to the circuit court of Marion

county, Indiana, that he had $393.05 balance of money in his hands, which was allowed him for services. In said report it was shown that said "Wagon Works Company" had filed a petition in bankruptcy, and the court ordered said trustee Ritter to transfer to the assignee in bankruptcy of said bankrupt all of the property, and discharged said Ritter as such trustee on payment of costs, but no transfer or disposition of the lots in controversy was made by said trustee; the lots in litigation are and have remained an open commons uninclosed, with a small building on one of the small lots. The said "wagon works" had been adjudged a voluntary bankrupt on March 30, 1877. On the 20th day of April Henry C. Adams was appointed assignee, and John W. Ray, then register in bankruptcy, as such register, conveyed and assigned to said Adams, as such assignee, all the property of said corporation of which it was seized or possessed, or in which it had any interest, on the 30th day of March, 1877. On May 21st, 1879, said Adams, the assignee, by order of the court sold and conveyed to Davies M. Green, subject to incumbrances, for $11, all the interest the bankrupt had in lots 114, 133, 134, 360, 361 and 363, named in the complaint, and the assignee was discharged on May 19, 1880.

On the 4th day of February, 1880, one Frank McWhinney filed a complaint in the superior court of Marion county, Indiana, in one paragraph, to quiet title to the lots in controversy against about thirty defendants, including Browning & Sloan, who held the judgment under which the appellants claim title.

On April 9, 1880, the court found that McWhinney claimed under a tax title amounting to $338.55, and decreed a lien for the same and costs, and ordered the sum paid into court within a time given, and that in default of payment, the lots be sold and the equity of redemp-

tion of the defendants be foreclosed.    Sale was had accordingly, and a sheriff's deed made thereon to the purchasers, viz., of lots numbered 114, 134 and 363, to Davies M. Green, and of lots 133, 360, 361 and 362, to Nathaniel N. Morris.

The appellees have, by mesne conveyances, succeeded to this title, as well as the title under the McWhinney suit, wherein the tax lien was foreclosed.

In the McWhinney suit the complaint erroneously described the lots as being in "Allen & Root's" second north addition to Indianapolis, and at one place, in a preliminary recital in the decree, they were also thus erroneously described.    There never was any such addition as "Allen & Root's" second north addition.    In the tax deed, as the finding shows, they were correctly described as being in "Allen's second north addition," etc., and they were thus correctly described in the judgment and decree where they were ordered sold, and they were sold and deeds made under proper description.

Appellants contend that there was a fatal variance between the description of the real estate in the complaint and as contained in the decree and order of sale.

Appellants' contention is:

1.  That the proceedings in the McWhinney suit were void and ineffective to bar the Browning & Sloan judgment, because the owner of the equity of redemption was not a party thereto.

2.  That the proceedings in the McWhinney suit were ineffective to conclude Browning & Sloan, because of the variance between the description of the lots in the complaint and in the decree and order of sale as above stated.

3.  That the proceedings in said suit were ineffective as to said Browning & Sloan and did not conclude them,

because the Marion Superior Court had no jurisdiction over the subject-matter of the action.

For convenience, we will consider appellants' points of contention in their inverse order.

As to the third and last objection to the foreclosure proceeding of April 9, 1880, that the court did not have jurisdiction of the subject-matter, it is urged that the act of December 21, 1872 (Acts of 1872, p. 129), was the first enactment in this State providing for the foreclosure of a tax lien, and that none was ever enforced prior thereto; that section 257, p. 120, provided that any person holding any deeds of lands executed by the county auditor for the nonpayment of taxes, may commence a suit in the circuit court of the county where such lands lie, to quiet his title, etc., and section 300, p. 139, stipulated that "All laws and parts of laws in conflict with the provisions of this act are hereby repealed."

Counsel say this was the law when McWhinney began his tax foreclosure, and when he obtained his judgment, and where the statute creates a new right and prescribes a mode of enforcing it, that mode must be pursued to the exclusion of all others. It is upon this theory that they challenge the jurisdiction of the Marion Superior Court.

In defining the jurisdiction of the superior court, it is provided, among other things, in section 1404, Burns R. S. 1894, that "Said court, within and for the county or counties in which it may be organized, shall have original concurrent jurisdiction with the circuit court in all civil causes except slander, and except such causes of which the court of common pleas now (February 15, 1871) has original exclusive jurisdiction," etc.

If we were to concede the appellants' contention, it would necessarily follow that the decree rendered in McWhinney's favor by the Marion Superior Court was

void, and that Green and Morris, by their purchase thereunder, acquired no title to the property in controversy. It would also follow that such decree and sale did not divest the liens of the judgment creditors, and that such liens still exist.

In the case of *Meikel* v. *Meikel*, 119 Ind. 421, very similar in its character to the case at bar, the court said: "The superior court * * has jurisdiction of actions brought by persons holding invalid tax deeds to recover from the owners of the land the amount due, and to foreclose his lien," and we are inclined to adhere to the ruling in that case.

The act of February 15, 1871, *supra*, confers original concurrent jurisdiction upon the superior court with the circuit court in this class of cases. The act of December 21, 1872, *supra*, providing that the holder of a tax deed may commence a suit in the circuit court of the county where such lands lie to quiet his title, we think, does not abrogate or destroy the former act. Laws *pari materia* must be construed with reference to each other, and if, by fair interpretation, force can be given to each so that both may stand, they should be upheld by the courts. In our opiuion the clause in the statute last enacted, naming or expressing that suit may be brought in the circuit court, does not exclude or suppress the idea that the superior court may have jurisdiction, especially when original and concurrent legal power is conferred by positive statute.

The second objection urged is that of a variance in the description of the property, as contained in the complaint and as contained in the decree and order of sale in the McWhinney case, and that the lots are not sufficiently identified. As we understand it, there is no claim that they are not sufficiently described in the decree. In our opinion the decree can not be attacked in a collateral

suit such as this, and were this a direct attack by appeal, the variance is an amendable one, and would be deemed amended.

In *City of Terre Haute* v. *Beach*, 96 Ind. 143, it was held that a complaint for an injunction, showing that no petition was ever presented to the board of commissioners for annexation of the territory described in the order of annexation, but that the only petition ever presented described other lands, supplied no grounds for an injunction. ''Where there is jurisdiction no irregularities or errors will render the proceeding void, and it is only void proceedings that can be collaterally assailed.''

In *Krewson* v. *Cloud*, 45 Ind. 273, the court say: ''Where the attention of the court below has not been called to a discrepancy between the allegations of a complaint and the proof, the objection can not be made for the first time in the Supreme Court. And where the discrepancy is, that real estate is described in the complaint as lying in 'range 13 west,' when the proof shows it to be in 'range 13 east,' the Supreme Court will regard the pleading as amended.''

In *Doe on Demise* v. *Smith*, 1 Ind. 451, the complaint for partition of the west half of the *southeast* quarter, etc., misdescribed it as the west half of the northeast quarter. Subsequent proceedings described the property correctly. The court said ''these defects might have been, and probably were, remedied by proof,'' and the court held that the title derived under the partition suit could not be impeached collaterally.

*Morris* v. *Stewart*, 14 Ind. 334, is a case of similar variance in description of land sold in a guardian's proceeding, and supports the same doctrine. It is the law that where the proof varies from the averment, the pleading being amendable below, it will be considered as amended in the Supreme Court. *Cleveland* v. *Roberts*,

14 Ind. 511; *Singer Mfg. Co.* v. *Doxey*, 65 Ind. 65; *Bristol Hydraulic Co.* v. *Boyer*, 67 Ind. 236; *Davis* v. *Doherty*, 69 Ind. 11; *Carver* v. *Carver*, 53 Ind. 241; *Brownlee* v. *Kenneipp*, 41 Ind. 216; *Estep* v. *Estep*, 23 Ind. 114; *Ebersole* v. *Redding*, 22 Ind. 232; *Case* v. *Wandel*, 16 Ind. 459.

The remaining question for consideration is whether the omission of the owner of the equity of redemption as a party to the McWhinney suit would prevent the decree in that case from operating to bar and foreclose Browning & Sloan, who were parties, and who were decreed to be barred and foreclosed. And, in this connection also, whether, in a collateral attack by parties to the record in the McWhinney suit, the validity of the decree in that cause may be impeached by evidence *dehors* the record, showing that the owner of the equity of redemption was not a party, the record disclosing no such defect of parties.

There are three propositions of law insisisted upon by the appellees as controlling and conclusive of the question:

1st. That the decree in the McWhinney suit barring and foreclosing Browning & Sloan is valid and binding as to them, although the owner of the equity of redemption was not a party to the suit.

2d. The objection that the owner of the equity of redemption was not a party to the McWhinney suit, could only be taken in that cause (not in a collateral suit), and then only by demurrer (if the defect of parties appeared on the face of the complaint, which it did not), or by answer, and not being so taken, the objection was waived.

3d. The validity and effect of the decree in the McWhinney suit can not be questioned by parties to it in a collateral suit, no matter how erroneous, and it is only

the omitted owner of the equity who did not have his "day in court" who is not concluded.

In Jones on Mortgages (4th ed.), volume 2, section 1679, it is said "if the owner of the equity has, through mistake, not been made a party, the mortgagee who has purchased at the sale may maintain a second action to foreclose the equity of such owner. * * * The foreclosure is valid as against those who were made parties to the proceeding." In section 1678, the author says: "The purchasers' title under an invalid sale is good against all except the mortgagor and those claiming under him. [*i.· e.*, except against the owner of the equity.] * * * The current of authorities agrees that a foreclosure sale, where the owner of the equity of redemption is not a party to the suit, 'is binding upon the parties who have been brought into the action.'" Wiltsie on Mortgage Foreclosures, 1st ed., p. 88. In *Martin* v. *Noble,* 29 Ind. 216, the owner of the equity of redemption was not served with process, and was therefore not a party. He died, leaving his widow his sole heir. Supplemental complaint was then filed with no process on it as to the widow. The owner of the land was never brought into court. The court held the proceedings ineffectual as to the widow as owner of the land, but binding on all other defendants, of whom there were about one-half dozen who were lienholders by mortgage or tax claims, etc. The court say, p. 219: "The question is therefore resolved in favor of the appellant Mrs. West (the widow), but we are not of the opinion that any other of the parties can avail themselves of the error." In *Curtis* v. *Gooding,* 99 Ind. 45, the facts were that John C. Curtis made a mortgage. He then conveyed the land to James B. Curtis and Carrie Curtis, husband and wife, who took as tenants by entireties. The mortgage was

foreclosed as to John C. and James B. Curtis, but Carrie was not a party. A second suit was brought on the mortgage to foreclose against Carrie. The court said, p. 48: "It is true that a decree is valid as to the parties served with process (*i. e.*, John C. and James B.)," but from this it can not be inferred that it is valid as to persons not served, for no man who has not had his day in court is bound by the decree." The converse is that a man having his day in court is bound.

The court says, p. 49: "In a suit to foreclose an equity of redemption not reached by a suit upon the same mortgage, it is not necessary to make persons parties whose rights were fully adjudicated by the first decree, for all that the second decree can properly do is to foreclose the equity of the person not a party to the original suit."

On page 47, the court said, making persons parties to the second suit who were parties to a former suit, would be "twice vexing them about the same cause of action," which would be improper.

Section 343, R. S. 1881, provides that the objection that the owner of the equity of redemption was not made a party to the original suit, could only be taken advantage of in that cause by demurrer or by answer, and not having been so taken, all objection was waived.

In 3 Jones on Mortgs., section 1410, it is said: "Objection that the owner of the equity is not made a party to the bill, may be taken by the mortgagor in his answer. * * * An objection to the nonjoinder of a defendant must be taken by demurrer or answer, or will be deemed to have been waived."

Wiltsie Mortgage Foreclosures (1st ed.), p. 91, thus declares the rule: "If the owner of the equity of redemption is omitted as a defendant, the mortgagor or any other party interested in the action may object to it

by demurrer if the defect appears on the face of the complaint, or by answer, if the defect does not so appear; if objection is not taken, the defect will be deemed waived."

In *Citizens' State Bank, etc.,* v. *Adams,* 91 Ind. 280 (285), itis said: "The appellant * * claims that the cross-complaint (to foreclose a mortgage) was insufficient because Ira B. Adams (the owner of the mortgaged property) was not * * a party to it. There was no demurrer for defect of parties. Defect of parties may be tested either by demurrer or * * answer. Failing to take advantage of it in either way was a waiver of such defect."

In *Binkley* v. *Forkner,* 117 Ind. 176, another mortgage case, the same familiar rule was applied. The facts, in brief, were these: Kemper bought land and gave a purchase-money mortgage to Eckert Bros. Before purchasing the land he bought an engine and machinery of Hadley, Wright & Co., and gave them a chattel mortgage on it. He then annexed the engine and machinery to the land. Kemper thereupon executed a second real estate mortgage on the land to Forkner to secure a debt to the Dubois County bank. Binkley became assignee of Hadley, Wright & Co.'s chattel mortgage claim, and brought suit against the Eckerts (the holders of the first real estate mortgage), and the Dubois County bank (who held the debt secured by the second real estate mortgage). Kemper, the owner of the land, as well as of the engine and machinery, was not a party to the action. The suit was simply between mortgagees.

The court say, on page 187: "Some suggestions are made in the briefs * * * in respect to a defect of parties. The length of the opinion forbids that we should notice these * * further than to say they do not involve any error. * * * No objection pertaining to the alleged

defect of parties seems to have been made in the court below.''

In support of this doctrine we also cite: *Atkinson* v. *Mott*, 102 Ind. 431; *Lee* v. *Basey*, 85 Ind. 543.

In *Cord* v. *Hirsch*, 17 Wis. 415, it is also held that the objection that the party in whom is the equity of redemption of mortgaged premises is not made a party to the foreclosure suit, must be taken by demurrer or answer, or it is waived; and on p. 421 it is said: ''Such waiver is * * * an abandonment of every objection or advantage of objection, arising * * * upon that ground equivalent to a release of errors .* * or a formal admission of record by the defendants that the parties before the court are the proper parties and all the necessary parties to a complete and formal adjudication. * * * It is as if the Legislature had declared that henceforth it shall be deemed there is no defect of parties.''

In *Baker* v. *Hawkins*, 29 Wis. 576, one Hawkins was shown by the complaint to be the owner of the property and was omitted as a defendant to the foreclosure suit. The court held the same doctrine and refused to reverse the case on the appeal of those who were parties, and cites Story, Daniell's Ch., and English authority, and N. Y. Chancery practice, showing the rule to be the same independent of statutory enactment. The Wisconsin, New York, and Indiana statutes simply declare what was already the rule. We cite to the same effect *Taylor* v. *Collins*, 51 Wis. 123.

In *Williams* v. *Meeker*, 29 Iowa, 292, it is said: A person claiming an interest in mortgaged premises, who is joined as a defendant in a proceeding to foreclose the mortgage can 'not object that the mortgagors are not served or in court; and, on p. 294, that ''defendant failed to show any title or interest in the lands to sup-

port his claim.   *   *   *   .He can not object to the fore-
closure.''

In *Semple* v. *Lee*, 13 Iowa, 304, it is claimed that one
Lee *et ux.* were necessary defendants. The court say, on p.
305:   ''It is a sufficient answer that Lee and wife do not
complain. As between the complainant and the mort-
gagors the judgment is good. If Lee and wife do not
complain, no other person or party can do so for them.''

The case of *Davis* v. *Bechstein*, 69 N. Y. 440, holds
that defect of parties must be taken by demurrer or an-
swer, or it is waived.

All the authorities, both in and out of the code States,
sustain this rule.

Bouvier, under ''Waiver,'' says:   ''In practice it is
required of every one to take advantage of his rights at
a proper time, and neglecting to do so will be considered
as a waiver.''

The case of *Reid* v. *Mitchell*, 93 Ind. 469 on pages 472,
473, holds that ''Where it is sought to impeach or vacate
the record of a judgment by the allegation of facts not
apparent on its face but wholly dehors the record, such
an attack upon the record of a judgment is a collateral
attack.   We need hardly add, nor cite authorities   *   *
that the record of a judgment can not be collaterally
attacked where it appears,   *   *   that all the parties
were before the court when the judgment was rendered,
*   *   *   a judgment, regular and legal upon its face, is
absolutely conclusive between the parties thereto,   *   *
until reversed or set aside on a direct appeal.''

In *Earle* v. *Earle*, 91 Ind., 27 on p. 42, it is said:  ''The
general and correct rule,   *   *   is, that a judgment by
a court of competent jurisdiction is not void, unless the
thing lacking, or making it so, is apparent upon the face
of the record. If the infirmity do not so appear, the
judgment is not void, but voidable,   *   *   * and is bind-

ing upon the parties to it, as against a strictly collateral attack.''

In *Dwiggins* v. *Cook*, 71 Ind. 579, the court holds that ''In a collateral suit, the validity of a judgment can not be called in question, because a necessary party was omitted in such suit.''

In *Harman* v. *Moore*, 112 Ind. 221 (222), the rule is thus stated: ''Where the record of a court of general jurisdiction, either affirmatively or by the presumptions which attach to it, shows that a judgment has been rendered against a party over whom the court had acquired jurisdiction, any attack, the sole purpose of which is to have the judgment declared void, by showing matters *dehors* the record, is a collateral attack and can not be made by a party to the judgment.''

In *Lantz* v. *Maffett*, 102 Ind. 23, the court said: ''Where it appears on the face of the record that the court had jurisdiction, the judgment can not be impeached collaterally. * * * If the court had jurisdiction, its judgment, however erroneous, is not void, and if not void, it is not vulnerable to a collateral attack. * * * It seems clear that the face of the record discloses a case in which the court had jurisdiction, * * * the judgment will repel all collateral attacks. * * * A judgment rendered by a court having general jurisdiction will be upheld against a collateral attack unless it appears on the face of the record to be void.''

The court said, in *Smith* v. *Hess*, 91 Ind. 424, that the general and correct rule is that a judgment by a court of competent jurisdictiion is not void unless the thing lacking or making it so is apparent on the face of the record. If the infirmity do not so appear, the judgment is not void but voidable, * * * is binding upon third parties and the parties to it as against a collateral attack.

We also cite, in this connection, *Woolery* v. *Grayson*, 110 Ind. 149.

Where there is jurisdiction, the parties are bound by all orders, judgments and decrees made in the cause. *Meikel* v. *Meikel, supra.*

"There can be no judicial inspection behind the judgment save by appellate power." *Anderson* v. *Wilson*, 100 Ind. 403 (407).

These rules, in our opinion, are applicable to, and conclusive of, the questions involved in the case at bar.

Browning & Sloan were made parties to the McWhinney suit, and were there challenged to assert their rights. They remained silent as to any judgment lien they might possess, when it was their duty to speak. *Res judicata* applies to everything that was determined in the original suit, and to everything that might have been therein adjusted.

The case of *Abbott* v. *Union Mut. Life Ins. Co.*, 127 Ind. 70, is adduced as authority against the view herein expressed, and seems to be the hope and reliance of the appellants for the reversal of this cause. That case contains several features quite analogous to the one under consideration. The land in controversy in the Abbott case was owned by Kelley, who executed two mortgages on the same, one to Abbott and the other to the Union Mutual Life Insurance Company. One Huddleson acquired a tax title of the property and foreclosed it in an action against the mortgagees, Abbott and the insurance company, and against one Knight, whose interest was nowhere disclosed. Neither Kelley nor his heirs were parties. A sale was had on the Huddleson tax foreclosure, the insurance company becoming the purchaser and receiving the deed. In this opinion the court said that as Kelley was the owner of the land at the time he executed Abbott's mortgage, the presumption is that he still

owned it at the time of his death, and that it descended to his heirs.

The court further said: "It seems to be quite well settled that a sale on a decree of foreclosure, where the owner of the property upon which the lien rests is not made a party, is void."

Assuming, without deciding, that these appellants acquired title by purchase at a sale on the Browning & Sloan judgment, and have the right to redeem, still they are not entitled to maintain this action to quiet title, for the reason that the tax lien would be yet unsatisfied, and a claim superior to the judgment of Browning & Sloan. Even upon the appellants' theory, the effect of the decree in the McWhinney case was to adjudicate that McWhinney had a tax lien on various lots, including those in controversy here, for $338.53, interest and costs, superior to the lien of the judgment under which the appellants claim, and that the appellees have succeeded, in the proportion in which their several lots were assessed for taxation, to the McWhinney tax lien. It is elemental that before they can ask the interposition of a court of equity in their behalf against such lien-holders, they should either pay, or offer to pay, the superior lien against which they seek to quiet title. Until then, they have no standing in a court of equity. *Shannon* v. *Hay*, 106 Ind. 589 (593); *Harrison* v. *Haas*, 25 Ind. 281; *McWhinney* v. *Brinker*, 64 Ind. 360; *Lancaster* v. *DuHadway*, 97 Ind. 565; *Rowe* v. *Peabody*, 102 Ind. 198; 2 Am. and Eng. Encyc. of Law, 310.

For these reasons we do not think the court erred in its conclusion of law upon the facts found.

Judgment affirmed.

HACKNEY, J., took no part in this opinion.

Filed May 16, 1894; petition for a rehearing overruled Nov. 13, 1894.