## BIERLY ET AL. v. ROYSE ET AL.

[No. 3,064.    Filed June 26, 1900.]

LIENS.—*Tradesmen and Mechanics.*—*Common Law Lien.*—*Waiver.*— Section 7268 *et seq.* Burns 1894 does not declare a lien, but provides the manner of enforcing a lien which a mechanic or tradesman has at common law, and under such statute a mill owner may enforce a lien on lumber, in his possession, for payment of his charges for sawing the same, and such lien is not limited to any given lot of lumber for the price of sawing the same, but extends to the quantity in his possession for any general balance due him, but where the mill owner voluntarily surrenders possession of lumber, such surrender operates as a waiver of the lien thereon.

From the Washington Circuit Court.    *Affirmed.*

*S. H. Mitchell* and *F. P. Cauble,* for appellants.

*F. M. Hostetter, H. Morris* and *M. B. Hottel,* for appellees.

WILEY, J.—Appellants were the owners of and operating a portable sawmill.    Under a contract with appellee Royse, they moved their mill to his farm for the purpose of sawing lumber for him from trees furnished to them by him. Under their contract they sawed 122,000 feet of lumber for which Royse agreed to pay them $3.25 per thousand.    Of this lumber appellee Royse sold appellees Morris & Morris 40,500 feet, and appellants objected to the removal of it until a balance of $197.80 due them for sawing had been paid; and it was agreed that the firm of Morris & Morris should pay appellants said balance out of the proceeds of the money derived from the sale of such lumber.    When this action was commenced, there yet remained in the mill-yard 15,000 feet of the lumber purchased by Morris & Morris. Appellee Royse was insolvent.    These facts are gathered from the complaint.

The prayer of the complaint is for judgment; that the amount due be declared a lien on the lumber at the mill, and

Bierly v. Royse.

on the money derived from the sale of the lumber to Morris & Morris, and that the lumber at the mill be sold, etc.

The cause was put at issue by answer and reply; trial by the court, and a special finding of facts made, and conclusions of law stated thereon. As the only error assigned is that the court erred in its conclusions of law, we have not thought it necessary to refer to the pleadings at any length. The facts found by the court are: That appellants Bierly and Dunn were partners, and were operating a sawmill; that, under a contract with appellee Royse, they moved the mill to his farm to saw into lumber logs furnished by him, and for such sawing were to be paid by him $3.25 per thousand feet, for all merchantable lumber, said payment to be made when the lumber was taken up from the mill-yard; that in pursuance to said contract a large amount of lumber was sawed and measured and taken away by Royse; that all logs that were large enough were to be quarter-sawed; that appellees Royse and Morris & Morris entered into a contract on or about May 13, 1898, whereby the latter were to have all the lumber thereafter sawed on the Royse farm; that the lumber was to be measured and taken up in lots of 15,000 or 20,000 feet, and was to be paid for within sixty days from delivery, and the money, or so much thereof as was necessary, was to be paid in discharge of a certain judgment against Royse; that Morris & Morris were also to pay a sufficient sum to pay the expenses of manufacturing and delivering the lumber so sold to them; that appellants were not parties to this contract, and knew nothing of it except as they had been informed; that before the commencement of this action a member of the firm of Morris & Morris went to the mill-yard for the purpose of removing lumber so purchased of Royse, when he was informed that the saw bill had not been paid, and appellants forbade him removing said lumber until said bill was paid; that, thereupon, said member of said firm informed appellants that it had been arranged in the contract

between Royse and said firm of Morris & Morris that the saw bill should be paid; that upon this statement appellants permitted said firm to remove about 20,000 feet of the lumber, leaving in the mill-yard about 15,000 to 20,000 feet; that thereafter appellants demanded payment for sawing the lumber moved, and forbade said Morris & Morris and said Royse from removing any more lumber unless the saw bill should be paid when the lumber was removed. The court further found that the firm of Morris & Morris was not making any defense to the action, but was ready and willing to pay the money to the parties entitled thereto; that there is due from Royse to appellant a balance of $178.25, and that Royse is insolvent. Upon these facts, the court stated its conclusions of law as follows: (1) That appellants had a lien on all the lumber sawed on the Royse farm; that they are entitled to a lien on all the lumber remaining in the mill-yard; that they were entitled to a lien upon the last lot of lumber removed by Morris & Morris; that said Morris & Morris are required to pay appellants for said lumber moved away only a sufficient sum to pay for sawing the lumber moved, over their objections, $3.25 per thousand feet, there being 15,787 feet removed by them. (2) "That the court finds for the plaintiffs and against the defendant Royse on his cross-complaint."

Upon these conclusions of law, the court pronounced judgment as follows: "That appellants recover of the appellee Royse $178.25, together with costs; that appellants have a lien upon, and are entitled to the possession of, the lumber yet in the mill-yard in the sum of $178.25, which lien is subject to satisfaction according to the terms of §§7268, 7269 Burns 1894; that appellees Morris & Morris shall pay to appellants the debt owing by them to Royse for the lumber upon the debt by said Royse owing to said plaintiffs the sum of $51.31 * * * which shall, when so paid, be a credit upon the above judgment, etc." and that Morris & Morris are not liable for costs.

The first question which suggests itself for consideration is, what is the nature of the lien, if any, acquired by appellants upon the lumber which they sawed under their contract with Royse? If they acquired any lien, it was not a statutory but a common law lien. The legislature has not provided for acquiring a lien in such cases.

Appellants urge that they have a lien under §7268 Burns 1894, which provides: "Whenever any person shall intrust to any mechanic or tradesman materials to construct, alter or repair any article of value, such mechanic or tradesman, if the same be completed and not taken away, and his fair and reasonable charges not paid, may, after six months from the time such charges became due, sell the same;" etc. This section does not declare any lien, but merely provides a manner for enforcing a common law lien. *Watts, Tr., v. Sweeney,* 127 Ind. 116, 22 Am. St. 615. In that case, the Supreme Court, speaking of §5304 R. S. 1881 (being §7268 Burns 1894), said: "This section does not declare a lien, but provides the manner of enforcing a lien which the mechanic has at common law." In this action, therefore, appellants were not seeking to enforce a statutory lien, for there is no statute in this State creating such a lien. That being the case, their rights are governed by §§5304, 5305 R. S. 1881, being §§7268, 7269 Burns 1894, and the lien that the common law gives them can only be enforced by a compliance with the statute. *Watts, Tr., v. Sweeney, supra.* By those provisions, the lien can not be enforced until six months after the "charges become due", and then by sale after notice, etc.

The case of *Holderman v. Manier,* 104 Ind. 118, is in point. There appellee owned and operated a portable sawmill. One Klinehance contracted with Manier to move his sawmill to his farm, and to saw lumber out of logs furnished by him at an agreed price per thousand feet. Manier sawed a large amount of lumber, a part of which was moved by Klinehance and a part piled up in the mill-yard by a man

employed by Klinehance. The latter failed, and sold the lumber so piled up to appellants. They made a demand on Manier for the lumber, who refused to surrender possession of it until his charges for sawing were paid. Appellants refused to pay such charges, and brought an action in replevin to recover possession of the lumber. It was held that, where a mill owner contracts to saw lumber for another at a stipulated price per thousand feet, his lien is not limited to any given lot of lumber for the price of sawing the same, but extends to the quantity in his possession for any general balance due him. It was further held that the voluntary surrender of the possession of property upon which a lien is held operates as a waiver of the lien, but in that particular case it was held that the permission of appellee extended to an employe of Klinehance to pile up the lumber in the mill-yard was not a surrender of the possession of the lumber. That the voluntary surrender of the property in such case is a waiver of the lien, see, also, Indiana Stat. Liens, §1480; *Picquet* v. *McKay,* 2 Blackf. 465; *Hanna* v. *Phelps,* 7 Ind. 21, 63 Am. Dec. 410; *Tucker* v. *Taylor,* 53 Ind. 93; *Legg* v. *Willard,* 17 Pick. (Mass.) 140.

Each paragraph of the complaint and the special findings show a voluntary surrender of the possession of the lumber on the part of the appellants, and hence, as we have shown from the authorities cited, they waived their right to assert their lien. As to the lumber that still remained in the mill-yard, appellants have a lien for the general balance due them under their contract, and may enforce it under the statute. Under the authorities, the complaint did not state any cause of action against the appellees Morris & Morris, but they have not assigned any cross-errors, and in the brief of counsel they say: "But defendants have not assigned cross-error, and are making no complaint of the judgment." If there was any error committed by the trial court, it was against the appellees Morris & Morris, and of this appellants can not complain. Appellants were entitled to a personal

judgment against appellee Royse for the balance due them, and were also entitled to enforce their common-law lien upon the lumber remaining in their possession. These the judgment gives them. They did not have any lien that could be enforced in an action of this character, and the record does not present any error to warrant a reversal.

Judgment affirmed.